Sara Ghafouri, OSB #111021
Lawson E. Fite, OSB #055573
American Forest Resource Council
5100 S.W. Macadam, Suite 350
Portland, Oregon 97239
Telephone: (503) 222-9505
Fax: (503) 222-3255
Email: sghafouri@amforest.org
Email: lfite@amforest.org

Attorneys for *Amicus Curiae*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PENDLETON DIVISION

| | |
|---|---|
| **GREATER HELLS CANYON COUNCIL,** and **OREGON WILD**, | Civil No. 2:17-cv-00843-SU |
| Plaintiffs, | **[PROPOSED]** *AMICUS CURIAE* **BRIEF OF AMERICAN FOREST RESOURCE COUNCIL IN OPPOSITION TO MOTION FOR INJUNCTION PENDING APPEAL [Dkt. 75]** |
| vs. | |
| **KRIS STEIN,** in her official capacity as District Ranger of the Eagle Cap Ranger District, Wallowa-Whitman National Forest; and **UNITED STATES FOREST SERVICE**, an agency of the United States Department of Agriculture, | |
| Defendants, | |
| **WALLOWA COUNTY**, a political subdivision of the State of Oregon, | |
| Intervenor-defendant. | |

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................ 1

II.  BACKGROUND ............................................................................................................ 3

    A.  Congress Included a Statutory CE in the 2014 Farm Bill .................................. 3

    B.  The Lostine Project Will Address Severe Insect, Disease, and Fire Risks ........ 4

    C.  Magistrate Judge Sullivan's Findings and Recommendations Denying Plaintiffs'
        Motion for Summary Judgement Were Adopted by This Court ......................... 7

III. STANDARD OF REVIEW ............................................................................................ 8

IV.  PLAINTIFFS HAVE NOT DEMONSTRATED SERIOUS QUESTIONS OR
     LIKELIHOOD OF SUCCESS ON THE MERITS ..................................................... 9

V.   CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrego v. Dow Chem. Co.*,
  443 F.3d 676 (9th Cir. 2006) .........................................................................12

*All. for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) .......................................................................2, 8

*All. for the Wild Rockies v. Peña*,
  865 F.3d 1211 (9th Cir. 2017) ..........................................................................8

*Apache Survival Coal. v. United States*,
  21 F.3d 895 (9th Cir. 1994) .............................................................................13

*Benisek v. Lamone*,
  138 S. Ct. 1942 (2018) .......................................................................................8

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992) ..........................................................................................11

*Conservation Cong. v. U.S. Forest Serv.*,
  803 F. Supp. 2d 1126 (E.D. Cal. 2011) .............................................................8

*Ctr. for Biological Diversity v. Ilano*,
  261 F. Supp. 3d 1063 (E.D. Cal. 2017) ......................................................14, 15

*Ctr. for Biological Diversity v. Salazar*,
  706 F.3d 1085 (9th Cir. 2013) ..........................................................................12

*Dean v. United States*,
  556 U.S. 568 (2009) .............................................................................................7

*Dellums v. Smith*,
  577 F. Supp. 1456 (N.D. Cal. 1984), *rev'd on other grounds*, 797 F.2d 817
  (9th Cir. 1986) .....................................................................................................9

*Hells Canyon Pres. Council v. Connaughton*,
  No. 3:11-CV-00023-PK, 2013 WL 665134 (D. Or. Feb. 22, 2013) ............12, 13

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) .............................................................................................9

*Lopez v. Heckler*,
  713 F.2d 1432 (9th Cir. 1983) .......................................................................8, 9

*Michigan Coalition of Radioactive Material Users, Inc., v. Griepentroq,*
  945 F.2d 150 (6th Cir. 1991) ........................................................................9

*Native Ecosystems Council v. Erickson,*
  No. 17-CV-53-M-DWM, 2018 WL 3649611 (D. Mont. Aug. 1, 2018)..................................14

*Native Ecosystems Council v. Krueger,*
  No. 13-CV-167-M-DLC, 2014 WL 3615775 (D. Mont. July 21, 2014) ..............................10

*Native Ecosystems Council v. Marten,*
  No. 17-CV-47-M-DLC-JCL, 2018 WL 4301371 (D. Mont. Sept. 10, 2018).........................10

*Russello v. United States,*
  464 U.S. 16 (1983)...........................................................................7, 12, 13

*Sierra Forest Legacy v. Rey,*
  691 F. Supp. 2d 1204 (E.D. Cal. 2010).........................................................10

*United States v. Fifty-Three (53) Eclectus Parrots,*
  685 F.2d 1131 (9th Cir. 1982) ................................................................14

*Western Radio Services Co. v. Espy,*
  79 F.3d 896 (9th Cir.1996) ...................................................................14

*Wildwest Inst. v. Bull,*
  472 F.3d 587 (9th Cir. 2006) .................................................................9

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008)............................................................................8

**Statutes**

16 U.S.C. § 6516(c) .............................................................................9

16 U.S.C. § 6516(c)(3) ..........................................................................9

16 U.S.C. § 6516(c)(3)(A) .......................................................................9

16 U.S.C. § 6516(c)(3)(B) .......................................................................9

16 U.S.C. § 6554(d)(2)(B) ....................................................................7, 12

16 U.S.C. § 6554 .............................................................................7, 12

16 U.S.C. §§ 6591a-6591d.........................................................................3

16 U.S.C. § 6591a(b)(1)..........................................................................3

16 U.S.C. § 6591a(b)(2)..........................................................................3

16 U.S.C. § 6591a(d)(1) ................................................................................................. 3

16 U.S.C. § 6591b(a)(1) ................................................................................................. 3

16 U.S.C. §§ 6591b(a) ................................................................................................. 11

16 U.S.C. §§ 6591b(b) ........................................................................................ 1, 3, 7, 11

16 U.S.C. § 6591b(b)(1)(A) ........................................................................................... 3

16 U.S.C. § 6591b(b)(1)(B) ........................................................................................... 4

16 U.S.C. § 6591b(b)(1)(C) ....................................................................................... 4, 6

16 U.S.C. §§ 6591b(c) ........................................................................................ 1, 3, 7, 11

16 U.S.C. § 6591b(c)(1) ............................................................................................... 4

16 U.S.C. §§ 6591b(d) ................................................................................................. 11

16 U.S.C. § 6591b(f) .................................................................................................... 11

16 U.S.C. § 6591d ....................................................................................................... 12

16 U.S.C. § 6591d(b)(4) ............................................................................................... 13

**Other Authorities**

36 C.F.R. § 220.4(a)(4) ............................................................................................... 13

36 C.F.R. § 220.6 ................................................................................................... 11, 12

36 C.F.R. § 220.6(d) ..................................................................................................... 3

36 C.F.R. § 220.6(e) ..................................................................................................... 3

40 C.F.R. § 1508.4 .............................................................................................. 7, 11, 12

# I.    INTRODUCTION

*Amicus Curiae* American Forest Resource Council (AFRC) is a regional trade association representing over 50 forest product businesses and forest landowners, which advocates for sustained-yield timber harvests on public timberlands throughout the West to enhance forest health and increase resistance to fire, insects, and disease.  The Lostine Corridor Public Safety Project (Lostine Project) is a good example of active management that improves forest health, benefits the public, and supports the local economy.

This case is centered around the Forest Service's application of the 2014 Farm Bill's categorical exclusion (CE), which allows a project to be excluded from procedural requirements of the National Environmental Policy Act (NEPA), so long as it meets certain statutory requirements.  16 U.S.C. §§ 6591b(b), (c).  The Lostine Project is located on an 11-mile corridor on the Wallowa-Whitman National Forest and in an area that has been designated by the Chief of the Forest Service as a landscape-scale insect and disease area under the Farm Bill.  The corridor has historic and recreational values that need protection from hazard trees and wildfires, including a Civilian Conservation Corps-era guard station, seven campgrounds, and three trailheads, providing access to popular recreational opportunities like the Eagle Cap Wilderness. In addition, private lands and residential developments are located within the corridor, which has been identified as a priority treatment area due to fire risk.

After being denied summary judgment, plaintiffs now seek to enjoin the commercial component of the project, which includes a modest amount (450 acres) of resiliency thinning, 12 acres of small group select units, 6 acres of patch cut treatments, and the construction of about

1.5 miles of road.[1]  Pls.' Mot. for Inj. Pending Appeal at 2 (ECF No. 75).  AFRC has a strong

interest in ensuring that the project is not enjoined so that the much-needed treatments in the

Lostine Corridor are implemented to protect public safety from wildfire risk and to reduce the

risk of insect and disease outbreaks on the Wallowa-Whitman National Forest.  At this stage,

AFRC's interest in this case focuses on plaintiffs' arguments regarding the Farm Bill CE.  On

summary judgment, AFRC filed an *amicus curiae* brief in support of defendants and defendant-

intervenor.  Amicus Br. (ECF No. 40).  As with our previous brief, AFRC's fundamental concern

is protecting the Forest Service's authority to carry out Congress' clear direction to expedite

treatment of areas that are experiencing increased tree mortality due to insect or disease

infestations or are at risk of hazard trees posing an imminent risk to public safety.

 AFRC writes to address two issues.   First, AFRC highlights that *all* aspects of the

Lostine Project are relevant to public safety, including the commercial treatments—not merely

the removal of hazard trees as plaintiffs seem to suggest.  It is critical that the project's resiliency

thinning treatments and fuel break treatments are implemented in this extremely fire-prone area.

Second, AFRC addresses how plaintiffs have not raised a likelihood of success or a serious

question on the merits related to the Healthy Forests Restoration Act (HFRA)/ NEPA claim

because the Farm Bill CE does not require the Forest Service to assess whether "extraordinary

circumstances exist," a requirement applicable only to regulatory CEs.

---

[1]   According to the declaration of Clint Foster, in support of the federal defendants' opposition brief, the thinning treatments have been reduced from 450 to 275 acres.  Forest Decl. ¶ 4 (ECF No. 88).

## II.     BACKGROUND

### A.     Congress Included a Statutory CE in the 2014 Farm Bill.

Recognizing that forest mortality due to insects, disease, and fire is a growing threat to forest health, environmental protection, clean water, and economic stability, Congress enacted the 2014 Farm Bill containing a statutory CE to expedite projects, like the Lostine Project, that need treatment immediately.  Agricultural Act of 2014, Pub. L. No. 113-79, Title VIII, §§ 8204, 128 Stat. 649, 915-17 (2014), *codified at* 16 U.S.C. §§ 6591a-6591d.  The Farm Bill requires the Secretary of Agriculture to designate landscape areas, if requested by a state, "in at least 1 national forest in each State that is experiencing an insect or disease epidemic."  16 U.S.C. § 6591a(b)(1).  Additionally, the Secretary may designate areas "as needed to address insect or disease threats."  16 U.S.C. § 6591a(b)(2).  The Secretary delegated these authorities to the Chief of the Forest Service.  AR 11252.

In such designated landscapes, the Forest Service may carry out projects "to reduce the risk or extent of, or increase the resilience to, insect or disease infestation in the areas."  16 U.S.C. § 6591a(d)(1).  Such a project "may be . . . considered an action categorically excluded from the requirements of [NEPA]."  16 U.S.C. § 6591b(a)(1).  The only requirements for using the CE are set forth in the Farm Bill itself.[2]  16 U.S.C. §§ 6591b(b), 6591b(c).  These requirements are that the project (1) "maximizes the retention of old-growth and large trees," 16 U.S.C. § 6591b(b)(1)(A); (2) "considers the best available scientific information to maintain or restore the ecological integrity, including maintaining or restoring structure, function,

---

[2]  Categorical exclusions that eliminate the need for the preparation of an EA or EIS are by no means rare.  The Forest Service's regulations identify at least 30 categorical exclusions.  *See, e.g.*, 36 C.F.R. § 220.6(d) (identifying 10 categorical exclusions where a decision memo is not required); 36 C.F.R. § 220.6(e) (identifying 20 categorical exclusions where a decision memo is required).

composition, and connectivity," 16 U.S.C. § 6591b(b)(1)(B); and (3) is developed through a "collaborative process" that is diverse, transparent, and nonexclusive. 16 U.S.C. § 6591b(b)(1)(C). Farm Bill CE projects are limited to 3,000 acres. 16 U.S.C. § 6591b(c)(1).

The enactment of this CE reflects congressional concern that "the current system for managing national forests affected by historic insect infestations has not been responsive to the speed and widespread impact of the infestations." H.R. Rep. 113-333, *Conference Report to Accompany H.R. 2642*, Jan. 27, 2014, at 512. Congress stated "[t]he outbreak of the pine bark beetle affecting states across the nation is a great concern . . . ." *Id.* A report on early versions of the legislation reflected the aim to "exclude[] projects . . . from the requirements for an environmental assessment or an environmental impact statement." H.R. Rep. 113-92, Part 1, *Report of the Committee on Agriculture to Accompany H.R. 1947, Federal Agriculture Reform and Risk Management Act of 2013*, May 29, 2013, at 278.

Congress intended to streamline the process, recognizing the large swaths of forests in need of restorative treatments to avoid further insect or disease infestation or catastrophic fire. At least three national forests in the Pacific Northwest Region of the Forest Service (Region 6) have developed projects using the authority under the Farm Bill's insect and disease CE, including the Lostine Project on the Wallowa-Whitman National Forest. Supp. AR 0411. As of April 2017, there were 45 completed projects that utilized the Farm Bill CE. AR 11194.

**B.      The Lostine Project Will Address Severe Insect, Disease, and Fire Risks.**

The Lostine Project is located along an 11-mile road corridor, traveling along the Lostine Wild and Scenic River designated as "recreational" (managed for public use) and provides an entry point to the Eagle Cap Wilderness, with access to popular recreational opportunities. AR 11243; Supp. AR 1341. Due to the lack of active forest management in the area, "forest stands

[are] in decreasing health that are currently posing high risks to the public who use and enjoy the corridor. Residents, visitors and emergency services agencies have shared concerns about the increasing number and frequency of downed hazard trees along roadways and campgrounds and increasingly dense and declining forest stands and heavy fuel loads." Supp. AR 1341; AR 11244.

To address those safety and forest health problems, the Lostine Project was developed in November 2015, after the landscape designation was finalized. AR 11280. The purpose of the project is "to reduce the current and future risk of insect and disease impacts. This in turn will reduce risks to people, developments, private property, and forest resources, including outstanding river values." AR 11244. The Forest Service determined that there is a need to implement the project to address the "risk to the public and the resource values in the Lostine River Corridor," finding that it would be "*irresponsible* to continue to pass off this important issue to future managers." AR 1249 (emphasis added).

The Lostine Project's activities are within 2,110 acres and will involve "a variety of thinning, mitigation of hazard trees, removal of hazardous fuels, and creations of small openings." AR 11244. The hazard tree mitigation will occur adjacent to roads, administrative sites and historically significant areas, and developed recreational sites, removing any tree or tree part that is within striking distance of a permanent or transitory target of value. AR 11259; *see* AR 11247 (Figure 4 shows hazard trees damaging a campground during the spring of 2016). Forest resilience treatment will occur on 450 acres and will not remove any trees over 21 inches diameter breast height (dbh), with the intent of reducing stand density and inter-tree competition. AR 11258; *see* AR 11246 (Figure 3 shows what the stands may look like post treatment). Fuel reduction treatment via small diameter hand thinning will occur on 600 acres. Group openings

will occur on 12 acres in even-aged lodgepole stands to create variability in structure and composition and replant more fire-resistant western larch.  AR 11257-58.  Patch cuts will occur on about 6 acres to create strategic fuel breaks "that generally connect to the Lostine River Access Road to natural upslope fuel breaks" and to create a helispot for emergency wildfire suppression purposes.  AR 11258.  The project will also require the construction of 1.5 miles of temporary roads, which will be decommissioned three years after project completion.  AR 11248.

Due to safety concerns resulting from the area's present condition, the project garnered support from a broad spectrum of the local community.  AR 10382; AR 10486.  The public recognized that the values that they cherish within the corridor are at risk unless the forest stands become more resilient to insect and disease and wildfire.  AR 10105; AR 10487 (District Ranger Stein stating, "We have received overwhelming positive support for this project").

The Forest Service engaged in collaboration prescribed by statute, 16 U.S.C. § 6591b(b)(1)(C), involving a substantial portion of the public.  Since November 2015, the Forest Service designed a collaborative process to engage members of the public who were interested or affected by the risk reduction activities, including "the Nez Perce Tribe, property owners within and adjacent to the corridor, individuals and organizations that are involved in natural resource management, public and emergency service providers, conservation organizations [(like Wallowa Resources and plaintiffs)], . . . local timber industry," including AFRC member Boise Cascade, and the Oregon Department of Forestry.  AR 11251; AR 11279-84.  The Forest Service's engagement was primarily in person to gather input on design ideas and mitigation measures and was "intended to be open and transparent."  AR 11279.   The end result is a project that was developed through a collaborative process and appropriately addressed the

concerns of diverse stakeholders, while meeting the purpose and need to improve forest resiliency to protect public safety and the recreational, historical, wildlife, and botanical values of the corridor.

### C. Magistrate Judge Sullivan's Findings and Recommendations Denying Plaintiffs' Motion for Summary Judgement Were Adopted by This Court.

Despite having participated in the collaborative process described above, plaintiffs oppose the measures in the Lostine Project, and they brought suit. On June 11, 2018, Judge Sullivan issued Findings and Recommendations (F&R) denying plaintiffs' motion for summary judgment. F&R (ECF No. 63). The F&R concluded, among other things, that the Farm Bill statutory CE is not subject to "extraordinary circumstances" review, which is a regulatory requirement under NEPA. The magistrate judge determined that:

> defendants' reading of the statutory CE as not subject to "extraordinary circumstances" review is the better interpretation, for multiple reasons. First, the plain language of § 6591b, the Farm Bill amendments, does not specifically state any requirement for "extraordinary circumstances" review. Courts should "ordinarily resist reading words or elements into a statute that do not appear on its face." *Dean v. United States*, 556 U.S. 568, 572 (2009). Second, the regulatory categorical exclusion definition, which requires "extraordinary circumstances" review, by its terms limits its application to those regulatory provisions only: "Any procedures *under this section* shall provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect." 40 C.F.R. § 1508.4. "Under this section" should not be read as applying to a separate statutory provision, such as the Farm Bill amendments CE. Third, § 6591b is silent on whether it incorporates "extraordinary circumstances" review, but it includes its own limitations on application of the CE, at §§ 6591b(b) and (c), as cited above. This creates the presumption that these are the only limitations on applying the CE, and that additional limitations should not be read into the statute. Fourth, Congress has shown that it can apply "extraordinary circumstances" review when it so wishes: HFRA § 404, 16 U.S.C. § 6554, provides that certain treatments "*may* be categorically excluded" from NEPA review, *id.* at § 6554(d)(1), but further states that this CE "shall be subject to the extraordinary circumstances procedures established by the Secretary pursuant to section 1508.4 of title 40, Code of Federal Regulations," *id.* § 6554(d)(2)(B). Where Congress expressly extended "extraordinary circumstances" review to one section of HFRA but not another, it is apparent that Congress did not intend to require "extraordinary circumstances" review under that other section, i.e., § 6591b. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally

presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation omitted)).

F&R 17-18 (ECF No. 63) (footnote omitted).

Plaintiffs filed an objection to the F&R, and defendants and defendant-intervenor responded to plaintiffs' objection. On August 17, 2018, this Court made a *de novo* determination regarding the portions of the F&R that were subject to plaintiffs' objection and adopted Judge Sullivan's F&R in its entirety. Order (ECF No. 70). Plaintiffs now file an injunction pending appeal to enjoin the commercial logging components of the Lostine Project.

## III.    STANDARD OF REVIEW

A motion for injunction pending appeal is governed by a legal standard similar to that for a preliminary injunction. Fed. R. Civ. P. 62(c); *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983); *Conservation Cong. v. U.S. Forest Serv.*, 803 F.Supp.2d 1126, 1129 (E.D. Cal. 2011). Movants must establish that they are "likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Alternatively, a party may obtain injunctive relief under the "sliding scale" approach. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). In that case, "'if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citations omitted). A party seeking interim preliminary injunctive relief "must generally show reasonable diligence." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018).

The Lostine Project is authorized by HFRA, so plaintiffs' motion is subject to additional restrictions. HFRA limits any stay pending appeal to 60 days, subject to renewal. 16 U.S.C. § 6516(c). HFRA mandates that in considering "any request for an injunction that applies to an agency action under an authorized hazardous fuel reduction project," 16 U.S.C. § 6516(c)(3), the reviewing court "shall balance the impact" of both short- and long-term effects of taking the action against the short- and long-term effects of not taking the action. 16 U.S.C. §§ 6516(c)(3)(A), (B); *Wildwest Inst. v. Bull*, 472 F.3d 587, 592 (9th Cir. 2006) (quoting 16 U.S.C. § 6516(c)(3)).

In the context of a motion for injunction pending appeal, evaluating the probability of success on the merits involves evaluating the movant's likelihood of obtaining reversal. *Lopez*, 713 F.2d at 1436. Because, generally, the district court has fully considered the merits of the underlying action, a movant seeking an injunction pending appeal will have a "greater difficulty in demonstrating a likelihood of success on the merits." *Michigan Coalition of Radioactive Material Users, Inc., v. Griepentroq*, 945 F.2d 150, 153 (6th Cir. 1991). A motion for injunction pending appeal is to be granted sparingly. *See Dellums v. Smith*, 577 F.Supp. 1456, 1457 (N.D. Cal. 1984), *rev'd on other grounds*, 797 F.2d 817 (9th Cir. 1986) (stays pending appeal are disfavored and are to be granted sparingly because they "interrupt the ordinary process of judicial review and postpone relief for the prevailing party"); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (holding that an applicant for a stay of an order pending appeal must make a "strong showing" of likely success on the merits).

## IV. PLAINTIFFS HAVE NOT DEMONSTRATED SERIOUS QUESTIONS OR LIKELIHOOD OF SUCCESS ON THE MERITS

As an initial matter, when a plaintiff seeks an injunction pending appeal following the district court's ruling on summary judgment, plaintiffs have a heavier burden to show that they

have raised serious questions on the merits or a likelihood of success on the merits. Often times, district courts reject a plaintiff's contention that it has raised a "serious question" on the merits because the plaintiff merely restates the arguments made on summary judgment. *See, e.g.*, *Native Ecosystems Council v. Krueger*, No. 13-CV-167-M-DLC, 2014 WL 3615775, at *2 (D. Mont. July 21, 2014) ("This contention was squarely rejected by the Court's previous Order and [the plaintiffs] raise no new issues, nor point to any conflicting law on the subject."); *Native Ecosystems Council v. Marten*, No. 17-CV-47-M-DLC-JCL, 2018 WL 4301371, at *1 (D. Mont. Sept. 10, 2018) (noting that the plaintiffs' assertions were the same arguments raised on summary judgment, that were rejected, and that the plaintiffs "failed to assert specific grounds as to *where* or *why* this Court erred in its decision" and therefore "failed to meet their burden to demonstrate that there are 'serious questions' which warrant an injunction pending appeal" (emphasis in original)); *see also Sierra Forest Legacy v. Rey*, 691 F. Supp. 2d 1204, 1208 (E.D. Cal. 2010) (noting that the plaintiffs' motion "now ask[s] this Court to revisit its findings on summary judgment and hold—without advancing any new argument or explanation of how this Court erred" and finding that plaintiffs failed to demonstrate a likelihood of success on the merits).

Here, plaintiffs restate the arguments made on summary judgment and in their objection to the F&R. *Compare* Pls.' Mot. for Inj. Pending Appeal at 14-17 (ECF No. 75), *with* Pls.' Objection at 7-13 (ECF No. 67). Plaintiffs restate the following three arguments. First, plaintiffs contend that "Congress adopted a legal term of art – 'categorical exclusion' – that is defined solely by NEPA's implementation regulations" and "[w]hen Congress chose to 'categorically exclude' projects aimed at addressing concerns over forest insects and/or disease rather than 'exempt' them from NEPA analysis, Congress adopted the 'cluster of ideas' attached to that

term." Pls.' Mot. for Inj. Pending Appeal at 15. Second, plaintiffs contend that their reading of Farm Bill does not place an "extra-statutory" requirement into the Farm Bill CE because "Congress expressly adopted the agency's scoping process," which requires the responsible official to determine whether the proposed action may have a significant effect on the environment. Pls.' Mot. for Inj. Pending Appeal 15-16. Third, plaintiffs assert that multiple national and regional Forest Service policy documents support that the Farm Bill CE is not exempt from NEPA. The magistrate court's F&R, and this Court's order adopting the F&R, already rejected all three arguments presented by plaintiffs.

Although plaintiffs would like to shoehorn the requirement for "extraordinary circumstances" review into the Farm Bill CE, that analysis is a regulatory, not statutory, creation. It is not required under NEPA and has no applicability to a CE created by the Farm Bill. The regulatory language unambiguously provides that "[a]ny procedures *under this section* shall provide for extraordinary circumstances . . . ." 40 C.F.R. § 1508.4 (emphasis added). The regulation's use of "this section" means the regulation itself. There is no "extraordinary circumstances" review required when the CE does not arise from the overall NEPA regulation or the Forest Service's regulations at 36 C.F.R. § 220.6.

Farm Bill section 6591b provides a subject project "may be . . . considered an action categorically excluded from the requirements of [NEPA]." 16 U.S.C. §§ 6591b(a), (a)(1). It further lists the specific requirements for using the CE, which include the area limitation, use of a collaborative process, location requirements, and limitations on road construction. 16 U.S.C. §§ 6591b(b),(c), and (d). The statute also provides the Forest Service must engage in public scoping of the project. 16 U.S.C. § 6591b(f). Congress chose to qualify these projects for CEs subject to specific limitations, not to subject them to a separate regulatory structure. *See Conn. Nat'l Bank*

*v. Germain*, 503 U.S. 249, 253-54 (1992) ("When the words of a statute are unambiguous . . . this first canon is also the last:  judicial inquiry is complete." (internal quotation marks omitted)).

In contrast, section 404 of HFRA, 16 U.S.C. § 6554, uses similar language to section 6591b but also provides such actions "shall be subject to the [Forest Service's] extraordinary circumstances procedures established by the Secretary pursuant to section 1508.4 of title 40, Code of Federal Regulations."  16 U.S.C. § 6554(d)(2)(B).  Section 605 also provides for a categorical exclusion for "Wildfire Resilience Projects" and requires that the agency "apply the extraordinary circumstances procedures under section 220.6 of title 36, code of Federal regulations (or successor regulations), when using the categorical exclusion under this section." 16 U.S.C. § 6591d.  "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation marks omitted; brackets in original).  Further, Congress is presumed to be aware of the legal context in which it legislates.  *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683-84 (9th Cir. 2006).  Given the emphasis on speed in the legislation, and the Ninth Circuit's recognition of the importance of the "efficiencies that the abbreviated categorical exclusion process provides," *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1097 (9th Cir. 2013), it is appropriate to hold that Congress did not intend the Farm Bill CE to be subject to extraordinary circumstances review.

Plaintiffs misplace reliance on *Hells Canyon Pres. Council v. Connaughton,* No. 3:11-CV-00023-PK, 2013 WL 665134, at *7 (D. Or. Feb. 22, 2013), in support of the argument that the term "categorical exclusion" is a term of art that the incorporates all the pre-existing regulatory framework.  That case involved a rider to the Consolidated Appropriations Act of

2005, which authorized the Forest Service to categorically exclude certain grazing permits from NEPA and expressly required that the agency determine that the decision "is consistent with agency *policy* concerning extraordinary circumstances." *Id*., at *2 (emphasis added). The plaintiffs argued that the rider also required the Forest Service engage in cumulative impacts analysis since it is part of the Forest Service's policy on extraordinary circumstances review. *Id*., at *6. The district court determined "[a]bsent any textual support to the contrary" it concluded that "Congress intended to adopt the pre-existing regulatory framework," which required the Forest Service to consider cumulative impacts as part of its policy on extraordinary circumstances." *Id*.,*7.

Here, on the other hand, there is textual support to the contrary. The Farm Bill CE makes no reference to extraordinary circumstances. Congress, however, has elected to do so in other provisions of HFRA, namely sections 404 and 605. Nor does the reference to "scoping" in the Farm Bill CE mean that Congress intended to incorporate extraordinary circumstances review, as plaintiffs seem to suggest. In fact, Congress, in section 605, provided for scoping and extraordinary circumstances review in the Wildfire Resilience Projects CE, indicating that those are separate requirements that are not linked to one another. 16 U.S.C. § 6591d(b)(4) (extraordinary circumstances review), (f) (scoping); *see Russello*, 464 U.S. at 23. The Ninth Circuit has acknowledged that Congress is free to replace or select certain NEPA procedures for certain projects or classes of project. *Apache Survival Coal. v. United States*, 21 F.3d 895, 904 (9th Cir. 1994). The Forest Service's regulation, 36 C.F.R. § 220.4(a)(4), declares that NEPA does not apply to actions subject to a statutory exemption. This is a reasonable interpretation of a statutory scheme that is entitled to *Chevron* deference.

Plaintiffs next rely on a Region 6 Memo, AR 09069, and other policy documents in support of the argument that the Forest Service must consider "extraordinary circumstances" before relying on the CE. Pls.' Mot. for Inj. Pending Appeal at 17. Although certain agency interpretations are afforded deference, the Ninth Circuit case law states that agency manuals, handouts, and other guidance documents do not have binding legal force and effect to bind the United States. *See Western Radio Services Co. v. Espy*, 79 F.3d 896, 901 (9th Cir.1996) (holding that the Forest Service Manual and Handbook did not have legal effect and force to bind the United States government). The Ninth Circuit has reasoned manuals, handbook, and guidance documents are guidelines, not substantive rules, and therefore do not create mandatory duties upon which the government could be liable. *Id.* "To have the force and effect of law, enforceable against an agency in federal court, the agency pronouncement must (1) prescribe substantive rules-not interpretive rules, general statements of policy or rules of agency organization, procedure or practice and, (2) conform to certain procedural requirements." *United States v. Fifty-Three (53) Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982) (internal quotation marks omitted). Therefore, both the Region 6 memo and other policy documents are non-binding. The Forest Service has proceeded cautiously in that area because of the likelihood of litigation like this case, but that caution should not be held against the agency.

Finally, plaintiffs incorrectly assert that other courts have held that "extraordinary circumstances" review applies under the Farm Bill CE. Pls.' Mot. for Inj. Pending Appeal at 14. In *Native Ecosystems Council v. Erickson*, No. 17-CV-53-M-DWM, 2018 WL 3649611, at *10 (D. Mont. Aug. 1, 2018), the district court never addressed the issue of whether extraordinary circumstances review applied to the Farm Bill CE. In *Ctr. for Biological Diversity v. Ilano*, 261

F. Supp. 3d 1063 (E.D. Cal. 2017),[3] a case challenging the Sunny South Project authorized under

the Farm Bill CE, the district court "assum[ed] for purposes of analysis that [extraordinary

circumstances] review was indeed required, notwithstanding the argument to the contrary" by the

Forest Service. *Id.* at 1068. The district court did not hold that extraordinary circumstances

applied—it merely assumed the application for sake of argument in light of the very extensive

analysis in the Forest Service's decision memo. Further *Ilano*'s dictum that a regulatory

requirement is somehow part of the statutorily created CE is contrary to clear congressional

intent (to expedite projects that need treatment immediately on order to address forest mortality

due to insect, disease and fire) and the unambiguous language of the Farm Bill CE.

The statutory text for the Farm Bill CE expressly represents Congress' intention to

insulate qualifying projects from "extraordinary circumstances" review. Because plaintiffs have

failed to raise any specific grounds as to where or why the magistrate or this Court erred in its

decision, they have failed to raise a serious question on the merit.

## V.     CONCLUSION

For the above-mentioned reasons, plaintiffs' motion for an injunction pending appeal

should be denied.

Dated this 24th day of October, 2018.

> /s/ Sara Ghafouri
> Sara Ghafouri, OSB #111021
> Lawson E. Fite, OSB #055573
> American Forest Resource Council
> 5100 S.W. Macadam, Suite 350
> Portland, Oregon 97239

---

[3] In *Ctr. for Biological Diversity v. Ilano*, 261 F. Supp. 3d 1063 (E.D. Cal. 2017), AFRC
attorneys represented intervenor-defendant Sierra Pacific Industries, an AFRC member, which
purchased the timber contract for the Sunny South Project on the Tahoe National Forest. Joseph
Decl. ¶ 9 (ECF No. 40-2).

Telephone: (503) 222-9505
Fax: (503) 222-3255
Email: sghafouri@amforest.org
Email: lfite@amforest.org

Attorneys for *Amicus Curiae*

## CERTIFICATE OF SERVICE

I, Sara Ghafouri, hereby certify that I, on October 24, 2018, I caused the foregoing to be served upon counsel of record through the Court's electronic service system.

Dated this 24th day of October, 2018.


/s/ Sara Ghafouri
Sara Ghafouri